UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OCTAVIO VIVANO,<br><br>    Plaintiff,<br><br>    v.<br><br>JOE A. LIZARRAGA,<br><br>    Defendant. | Case No. 3:18-cv-00028-WHO<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

## INTRODUCTION

Petitioner Octavio Vivano presents five claims as part of his petition for federal habeas relief from his state convictions: (1) the limitation on cross examination of the victim violated his Confrontation Clause right; (2) the admission of the victim's statement about race in the sexual assault report violated his Confrontation Clause right; (3) trial counsel rendered ineffective assistance by failing to object on federal constitutional grounds to the limitation on cross examination; (4) trial counsel rendered ineffective assistance by failing to explain to the trial court pertinent facts about a prior incident involving the victim; and (5) appellate counsel rendered ineffective assistance by failing to present an ineffective assistance of trial counsel claim for number 3 on direct appeal. Each of these claims lacks merit. The petition is DENIED.

## BACKGROUND

**A. Factual Background**

The following factual background is taken from the July 25, 2016 unpublished opinion of the California Court of Appeal on Vivano's direct appeal:

> On the evening of July 14, 2000, a 19-year-old woman who was visiting Oakland went out with an African-American man she met on a "party line" that people could call to meet others. Their date ended when the man, while driving in an area of Oakland known for prostitution, suggested she should get out of the car and "make him some money." The victim was offended, argued with the man, got out of the car, walked away, and planned to call a friend on a pay phone.
>
> Before the victim could find a phone, a Hispanic man she did not know drove up from behind her and asked if she wanted a ride. She declined the offer and kept walking. Someone then came from behind her, hit her in the face, dragged her into a car, and beat her as they drove away, with part of her legs still hanging outside the car door. A total of four men, all Hispanic, were in the car, and Vivano was driving. They took the victim to a nonresidential area on Tunnel Road near Hiller Highlands in Oakland, ripped off her pants, and took turns raping her. They then pushed her out of the car and drove away. The victim ran down the mountain and flagged a passing car, and the motorist called police.
>
> The victim was taken to the hospital, where swabs were taken from her vagina and other parts of her body during a sexual-assault response team (SART) examination. Nine years later, in 2009, Vivano was convicted of different crimes and his DNA profile was entered into a forensic DNA databank, the Combined DNA Index System. DNA testing revealed that Vivano's DNA matched the DNA of sperm found on the victim, and the statistical frequency of such a match was approximately one in one quadrillion. Vivano was eventually arrested in 2010 in Arizona.
>
> Police contacted the victim and asked her to look at a photographic lineup that included Vivano, but she could not identify him and instead said that two other people in the lineup could be possible suspects. But during the preliminary hearing and again at trial, she identified Vivano as the driver of the car and testified that she remembered his distinctive facial acne scars.

Answer to Order to Show Cause ("Ans.") Ex. D [Dkt. No. 15-6] ECF page 19 at 2–3, (*People v. Vivano*, No. A141737, 2016 WL 3983180 (Cal. Ct. App. July 25, 2016) (unpublished)).

**B. Procedural Background**

On February 5, 2014, a jury in Alameda County Superior Court found Vivano guilty of four counts of forcible rape while acting in concert in violation of California Penal Code sections 264.1(a) and 261(a)(2), and found true allegations that he kidnapped the victim in the commission of the rape in violation of California Penal Code sections 667.61(e)(1) and 667.8(a). First Petition for Writ of Habeas Corpus ("Pet.") ¶¶ 1–3 [Dkt. No. 1]. He also was convicted of one count of kidnapping to commit another crime in violation of California Penal Code section 209(b)(1) and

2

one count of assault by means likely to produce great bodily injury in violation of California Penal Code section 245(a)(1). *Id.* On March 7, 2014, Vivano received a sentence of 52 years to life in state prison. *Id.* ¶ 4.

Vivano appealed his conviction in the California Court of Appeal raising some of the same claims he asserts here.[1] *See* Ans. Ex. D. On July 25, 2016, the court affirmed his conviction and sentence. *Id.* at 15. On October 26, 2016, the California Supreme Court denied review. Ans. Ex. I [Dkt. No. 15-6] ECF page 183.

On November 20, 2017, Vivano filed a petition for habeas relief before the California Supreme Court, raising a confrontation clause claim, an ineffective assistance of trial counsel claim, and an ineffective assistance of appellate counsel claim. *See* Ans. Ex. J [Dkt. No. 15-7] ECF page 2. On January 3, 2018, while that petition remained pending, he filed this federal petition, along with a motion to stay this proceeding until the state court had disposed of his unexhausted claims. *See* First Motion for Stay and Abeyance [Dkt. No. 2].

On February 21, 2018, the California Supreme Court summarily denied Vivano's petition for writ of habeas corpus. Ans. Ex. K [Dkt. No. 15-7] ECF page 63. On March 1, 2018 the case was assigned to me, and on March 6, 2018, I denied as moot Vivano's motion for a stay. Order Setting Briefing Schedule [Dkt. No. 12].

### LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

---

[1] He did not raise claims of ineffective assistance of trial counsel for failure to object on Confrontation Clause grounds to the trial court's limitation on cross-examination or cumulative error.

3

of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

Vivano alleges that the trial court violated his Confrontation Clause right by limiting cross-examination of the victim and by admitting the victim's statement identifying her attackers' race; that his trial counsel was ineffective for various reasons; and that his appellate counsel was ineffective for failing to raise one argument for ineffective assistance of trial counsel.

### I. CONFRONTATION CLAUSE CLAIMS

Vivano argues that the trial court violated his confrontation right by (1) limiting cross-examination of the victim regarding a prior incident that occurred in Las Vegas and by (2) admitting a statement from the SART report in which the victim indicated that her attacker was Hispanic. Vivano's first claim is barred from federal habeas review because it is procedurally defaulted. The second also fails because the court of appeal's decision was not objectively unreasonable.

#### A. Limitations on Cross-Examination of Victim

Vivano claims that the trial court limited his right to cross-examine the victim in violation

4

of the Sixth and Fourteenth Amendments. Pet. 16. While Vivano's trial counsel failed to object on confrontation grounds at trial, Vivano asserts that he can establish cause and prejudice to excuse procedural default because the failure to object was due to the ineffective assistance of trial counsel. *Id.* at 14–15.

Vivano presented this claim on direct appeal and in his petition for state habeas review. Ans. Ex. E 25–27, Ex. J 25–32. The court of appeal summarized the relevant facts as follows:

> During their investigation, Oakland police learned that the victim had been the victim of a sexual assault in Las Vegas about a year after her attack in Oakland. The prosecutor and Vivano's attorney apparently received an incident report from the Las Vegas police department summarizing the investigation of the 2001 incident, but the report offers little detail. The incident report is dated December 13, 2001, but it describes an event that took place months earlier. It states that around 11 p.m. on August 18, 2001, the victim was attacked as she was walking from her car to her apartment complex. The attacker hit her, apparently rendering her unconscious, and she woke up around 12:30 a.m. in a ditch with her shirt off and her shorts ripped. The victim called 911 on her cell phone, and the police who responded caller for an ambulance to take her to the hospital, where examiners took pictures of the cuts and bruises on her face, arms, and buttocks. The incident report also states: "[The victim] said that a metro police officer took a police report. At this time we have been unable to find that report, and it was suggested that she file a report for that date." (Unnecessary capitalization omitted.) It is unclear whether such a report was ever filed (either at the time of the attack or after the incident report was prepared) or why the incident report was prepared in December.
>
> The prosecutor moved in limine to bar admission of evidence of the victim's sexual conduct (Evid. Code, § 1103, subd. (c)(1)), including the 2001 sexual assault in Las Vegas. At the hearing on the motion, Vivano's attorney said he had seen the report relating to the assault but did not have it with him, meaning his arguments were based on his recollection of the report and not on the actual document. Defense counsel stated he recalled that the victim had reported that attack a few months after it purportedly occurred, and he wanted the option to cross-examine the victim about whether the 2001 event was a "false reporting." Such a false reporting was not in fact clearly established by the police document, which noted that police had responded to the scene when the victim called for them and that pictures of her injuries were taken when she was taken to the hospital—not months later, as defense counsel mistakenly recalled at the hearing. Defense counsel did acknowledge that he had no evidence that it was a false report. And he all but conceded that it would be a risky strategy to question the victim about her truthfulness, given that she most likely would testify that she was, in fact, assaulted in 2001 as she had reported.
>
> The trial court ruled that in the absence of any evidence that the victim made a false report, the 2001 assault was not relevant to the victim's

>       credibility and thus was inadmissible. The ruling was without
>       prejudice to Vivano raising the issue again "if something happens
>       during the trial that changes everything and makes it relevant and
>       appropriate for inquiry." No further information was ever provided.

Ans. Ex. D at 12–13.

The court of appeal concluded that Vivano forfeited his confrontation claim by not raising it during trial. *Id.* at 14; *see People v. Thornton*, 41 Cal. 4th 391, 443, 161 P.3d 3, 40 (2007), *as modified* (Aug. 15, 2007) (noting that "a party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct") (internal quotation marks and citation omitted). Because California's contemporaneous objection requirement is an "independent and adequate state procedural rule," federal habeas review is barred unless Vivano can show cause and actual prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012); *Ylst*, 501 U.S. at 806 (concluding that federal review was barred where the California Court of Appeal found procedural default because of failure to object during trial). Specifically, Vivano must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The cause standard requires the petitioner to show, for example, that "some objective factor external to the defense impeded counsel's efforts to construct or raise the claim." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (internal quotation marks and citation omitted). A petitioner may show cause by establishing constitutionally ineffective assistance of counsel ("IAC"), but attorney error that does not rise to the level of a constitutional violation is insufficient to excuse a procedural default. *See id.* at 494; *Carrier*, 477 U.S. at 486–88.

This claim is not reviewable because Vivano has not shown cause and prejudice to excuse his procedural default.[2] He asserts only one basis for cause: that trial counsel's failure to object

---

[2] The court of appeal concluded in the alternative that Vivano's claim lacked merit because "[t]he victim's credibility regarding her attack in Oakland was never seriously questioned, and examining her about the Las Vegas attack would have added little, in anything, to the jury's evaluation of her truthfulness." Ans. Ex. D 15. If I were to analyze the merits of this claim, I would not find that the court's determination was an unreasonable application of federal law to the facts.

6

on constitutional grounds at trial constituted IAC under *Strickland v. Washington*, 466 U.S. 668 (1984). Pet. 14–16. As discussed in more detail below, trial counsel's failure to object did not bring his representation below an objective standard of reasonableness. *See infra* Section II.A. He does not separately argue that the prejudice is so great that to refuse to hear the procedurally defaulted claim would constitute a "miscarriage of justice." *See McQuiggin v. Perkins*, 569 U.S. 383, 391–92 (2013). Because the court of appeal did not unreasonably conclude that trial counsel's performance was not deficient under *Strickland*, Vivano's only theory of cause fails.

### B. Statement Identifying the Attackers' Race

Vivano contends that the court of appeal unreasonably denied his claim that admission of statement from the SART report identifying the attackers' race violated his confrontation right. Pet. 35–37. He argues that the SART examiner Debbie Goettseh was the declarant and her statements were testimonial, which means that the trial court violated his Confrontation Clause rights by admitting those statements when Goettseh was not available for cross examination. *Id.* He also asserts that the court of appeal applied the wrong standard for prejudice. *Id.* at 37–39.

The California Court of Appeal addressed this claim in its unpublished opinion of July 25, 2016. The California Supreme Court summarily denied review on appeal. Ans. Ex. I. Because the court of appeal was the last court to present a reasoned decision on this claim, I review its decision here. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).

On direct appeal, the court described the relevant background as follows:

> The nurse [Debbie Goettseh] who examined the victim after her attack in 2000 no longer worked at the hospital at the time of trial in 2014. Before trial, the prosecutor moved in limine to allow the physician's assistant who supervised and trained the examining nurse to testify at trial about the results of the SART examination. Vivano opposed the request, arguing that admission of the contents of the SART examination would violate the confrontation clause.
>
> During the trial court's discussion of the in limine motion with trial counsel, it became clear that the prosecutor sought the admission of pictures and diagrams attached to the SART report to demonstrate that the victim suffered injuries consistent with being raped by multiple people. The trial court ruled that the documents were admissible "to the extent that they are a record of the objective observations made by this nurse and actions taken, for example, taking photographs,

7

> taking swabs, putting the swabs into an envelope and labeling them, things like that, by the examining nurse." (*E.g., People v. Huynh* (2012) 212 Cal.App.4th 285, 320-321 [no violation of confrontation clause to admit testimony about photographs contained in SART report].) The court cautioned, however, that it would not be appropriate to admit over a hearsay objection evidence of what the victim said to the examining nurse, and it stated that "[w]e'll deal with that [potential hearsay objection] at trial."
>
> The lead director [Hillary Larkin] of the sexual-assault and domestic-violence program at the hospital where the victim was examined testified at trial that the SART examination of the victim revealed injuries consistent with the victim's trial testimony about the attack. After the attorneys for both sides had finished questioning the witness, the trial court invited questions from jurors. After the court conferred with counsel about some of the questions, the court asked the witness whether there was "any record of the young lady telling the examiner how many people assaulted her." The following exchange then took place, without objection:
>
> "THE WITNESS: Yes.
>
> "THE COURT: And what was reported to the examiner by [the victim]?
>
> "THE WITNESS: Okay. So, there's a specific question, number three, name, number, and race of the assailants, so . . .
>
> "THE COURT: First of all, the number. Did she report a number?
>
> "THE WITNESS: She lists four individuals.
>
> "THE COURT: All right. Did she say anything about the race or races of those individuals?
>
> "THE WITNESS: She describes that they're all Hispanic. So, she gives a name and approximate age and ethnicity of each."
> The foregoing testimony was consistent with the victim's testimony that she was raped by four men and that "[t]hey were all Hispanic."

Ans. Exh. D 8–9.

The court of appeal rejected Vivano's claim and reasoned as follows:

> For the first time on appeal, Vivano argues that the admission of the victim's statement in the SART report identifying her attackers' race violated the confrontation clause because the statement was testimonial. We begin by doubting that Vivano preserved this argument for appellate review since he never obtained an express ruling on the objection from the trial court. (*People v. Ramos* (1997) 15 Cal.4th 1133, 1171 [where party files motion in limine but does not secure express ruling from court, argument is forfeited].)
>
> But we conclude that the argument lacks merit even if it was properly preserved. This is because the confrontation clause was not implicated even assuming, without deciding, that the victim's

8

statements to the nurse were testimonial. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior testimonial statements." (*Crawford v. Washington* (2004) 541 U.S. 36, 59, fn. 9; *see also People v. Cage* (2007) 40 Cal.4th 965, 978 & fn. 7.) The victim herself testified on direct examination that all four men who raped her were Hispanic.

Furthermore, the admission of the victim's statements to the nurse about her attacker's race was not prejudicial under any standard. Vivano makes much of the fact that during deliberations the jurors asked to hear the victim's testimony of descriptions of the driver of the car she gave "to police and medical personnel," and jurors were "interested especially in distinguishing facial and/or skin characteristics." The court reporter read back a brief excerpt from the hospital employee [Larkin] who testified about the victim's SART examination, which Vivano interprets to mean that the nurse's comments about the attackers' race played a significant role in Vivano's conviction. The trial court also told jurors that their question could be interpreted as seeking testimony from the victim herself, and that testimony also was read to jurors after they confirmed they wanted to hear it. Vivano speculates that "[s]ince [petitioner] was Hispanic, [the victim's] identification of her attacker as Hispanic significantly increased [petitioner]'s probability of being convicted." Although it is no doubt true that race generally plays a significant role in eyewitness identification, we find it likely here that jurors' focus on "facial and/or skin characteristics" was a reference to facial acne scars, as opposed to race, because the victim testified she remembered Vivano as having "a polka dot face" with "little holes" all over it. The fact that the nurse briefly testified about the race of the victim's attackers in a way that was consistent with the victim's own testimony does not undermine our confidence in the verdict.

*Id.* at 9–10.

Even assuming Vivano's claim is not barred from federal review,[3] it fails. The excerpts above show that the court of appeal based its decision on a finding that the victim, not the nurse, was the declarant. Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C.A. § 2254(e)(1). Vivano bears the burden of rebutting that presumption with clear and convincing evidence. *Id.* His conclusory assertion that Goettseh was

---

[3] The respondent argues that Vivano did not exhaust this claim as required by 28 U.S.C. section 2254(b) because he did not fully and fairly "present both the factual and legal basis for the claim to the state court." *Robinson v. Schriro*, 595 F.3d 1086, 1101 (9th Cir. 2010); *see Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009). In his petition for review in the California Supreme Court, Vivano's heading read: "The victim's statement identifying her attackers' race in the SART report was testimonial and since the report's author was unavailable, its admission violated the confrontation clause." Ans. Ex. H at 8 (capitalization omitted). Vivano argued that "[h]ad defense counsel had an opportunity to cross-examine the author of the report, the examining nurse, defense counsel could have asked questions of determine if 'Hispanic' was suggested to Doe." *Id.* at 8–10. Because the claim fails for other reasons, I will assume these arguments were sufficient.

the declarant is insufficient to meet that burden. *See* Pet. 35. But in the case he cites in support of his arguments that the statements were testimonial, the victim was the declarant of the statements to examiners. *See People v. Vargas*, 178 Cal. App. 4th 647, 657–60 (2009).

Even if Vivano could show that the nurse was the declarant and that admitting the statement was a Confrontation Clause violation, he cannot show that the court of appeal unreasonably determined that there was no prejudice. The court of appeal did not apply the wrong standard for prejudice as Vivano contends. The *Chapman* harmless error standard applies to a finding of prejudice for Confrontation Clause claims. *See United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004) (noting that a court's considerations include "the importance of the evidence, whether the evidence was cumulative, the presence of corroborating evidence, and the overall strength of the prosecution's case") (quoting *United States v. Bowman,* 215 F.3d 951, 961 (9th Cir.2000)); *see also Chapman v. California*, 386 U.S. 18, 24 (1967). Vivano asserts that the court instead applied the "undermine confidence in the outcome" standard from *Strickland* and *Bagley*. Pet. 37–38; *see Strickland*, 466 U.S. at 694; *United States v. Bagley*, 473 U.S. 667, 681–82 (1985). He bases his argument on the following language from the court: "The fact that this nurse briefly testified about the race of the victim's attackers in a way that was consistent with the victim's own testimony *does not undermine our confidence in the verdict*." Ans. Ex. D at 10 (emphasis added). But the court clearly wrote that it found no prejudice "under any standard." *Id.* The single sentence he cites does not demonstrate that the court applied the wrong standard.

Moreover, the court did not unreasonably conclude that admission of the statement was a harmless error. Vivano acknowledges that "Goettsch's statement was cumulative in the sense that Doe also testified that her assailants were Hispanic."[4] Pet. 38; *see* Ans. Ex. B Reporter's Transcript Vol. 1 ("1RT") at 38 [Dkt. No. 15-5]. He argues that because the jury requested read-back of testimony about the victim's statements as captured by police and medical personnel, all the testimony about the attackers' race must have played a significant role in the conviction. Pet.

---

[4] Given that the victim had already testified that her attacker was Hispanic, Vivano's argument about the need for cross-examination of Goettsch is also unpersuasive. He could have, but did not, cross examine the victim herself on the topic of whether Goettseh asked suggestive or leading questions about race. *See* Answer 30.

10

38–39. But as the court of appeal noted, the jury was "interested especially in distinguishing facial and/or skin characteristics." *See* Ans. Ex. A Clerk's Transcript Vol. 2 at 262 [Dkt. No. 15-4]. Given the language the jury used, the court of appeal did not unreasonably conclude that this request more likely referred to the victim's testimony about the assailant's acne scars rather than any testimony about race. *Id.*

For the reasons set forth above, Vivano's claim is denied.

## II. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Vivano asserts that his trial counsel was ineffective for three reasons: (1) he failed to object on confrontation grounds to the trial court's limitation on cross-examination of the victim; (2) he failed to accurately and completely relay the facts of the Las Vegas incident to the trial court; and (3) there was cumulative prejudice. For the first, Vivano has not met his burden to show that the Supreme Court of California had no reasonable basis to deny relief. For the second, the court of appeal did not unreasonably apply the *Strickland* standard to the facts of this case. Finally, Vivano did not exhaust the cumulative prejudice claim, and it is therefore barred from federal habeas review.

Vivano must make two showings in order to prevail on his IAC claims. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687–88. Second, he must establish that counsel's deficient performance prejudiced him, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Harrington v. Richter*, 562 U.S. 86, 109 (2011) (internal citation omitted). Counsel's failure to raise a meritless legal argument cannot give rise to an IAC claim. *Shah v. United States*, 878 F.2d 1156, 1162 (9th Cir. 1989).

11

## A. Failure to Object on Constitutional Ground to Trial Court's Limitation on Cross Examination

Vivano asserts that his trial counsel provided ineffective assistance by failing to object on Confrontation Clause grounds to the trial court limiting cross-examination of the victim about the Las Vegas sexual assault. Pet. 24. He contends that there was no possible tactical reason for counsel to forgo such an objection, and therefore the failure fell below an objective standard of reasonableness. *Id.* The failure also prejudiced him. *Id.* at 24–26.

Vivano raised this claim in his habeas petition before the California Supreme Court. Ans. Ex. J at 32–34. The court summarily denied the entire petition. Ans. Ex. K. When presented with a state court decision that is unaccompanied by a rationale, a federal court must conduct an independent review of the record to determine whether the state court "clearly erred in its application of controlling federal law." *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). The review is not de novo; instead, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington*, 562 U.S. at 98.

### 1. The Merits of the Confrontation Clause Claim

As laid out in Section I.A, I concluded that review of Vivano's confrontation claim on the Las Vegas incident was barred because of procedural default given that he failed to object on Confrontation Clause grounds at trial. For purposes of determining whether that failure to object constituted IAC as Vivano contends here, I will address the merits of the underlying claim.

The relevant facts are stated in Section I.A. The court of appeal addressed the merits of the confrontation clause claim as follows:

> In any event, the argument lacks merit. "Although the right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting on their credibility, 'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.'" (*People v. Quartermain* (1997) 16 Cal.4th 600, 623, quoting *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679.) "A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might have received a significantly different impression of the witness's credibility had the excluded cross-examination been permitted." (*Quartermain*, at pp. 623-624.) The victim's credibility regarding her attack in Oakland was never seriously questioned, and examining her about the Las Vegas attack would have added little, in anything, to the jury's evaluation of her truthfulness. (*People v. Bautista* (2008)

> 163 Cal.App.4th 762, 783 [no error under confrontation clause to exclude testimony about victim's sexual conduct where examination on topic "would not have had a significant impact on defendant's defense or on the jury's impression of (the victim's) credibility"].)

Ans. Ex. D at 14–15.

Vivano asserts that the court identified the correct governing legal principles but unreasonably applied them to the facts in two respects. Pet. 16. First, by contrast with the court's conclusion that "the victim's credibility regarding her attack in Oakland was never seriously questioned," Vivano challenged victim's credibility of her account of events at the night of the attack and her identification of him. *Id.* at 17–21. Second, contrary to the court of appeal's conclusion that cross examination regarding the incident "would have added little, if anything, to the jury's evaluation of [the victim's] truthfulness," cross-examination could have cast doubt on her credibility and supported his theory that the victim had consensual intercourse with him while working as a prostitute on the night of the attack. *Id.* In addition, he contends that he suffered prejudice because the court's limitation on cross-examination hindered his ability to develop his misidentification theory. *Id.* at 21–23.

"[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). Accordingly, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examinations based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' [sic] safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). A defendant meets his burden of showing a Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness's] credibility . . . had [the defendant's] counsel been permitted to pursue his proposed line of cross-examination." *Del. v. Van Arsdall*, 475 U.S. 673, 680 (1986); *see Slovik v. Yates*, 556 F.3d 747, 753 (9th Cir. 2009) (applying the same standard). "A limitation on cross-examination does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant, and denies the jury sufficient information to appraise the biases and motivations of the witness." *United*

1 | *States v. Urena*, 659 F.3d 903, 907–08 (9th Cir. 2011).

Vivano's claim lacks merit. First, the court of appeal did not unreasonably conclude that the victim's credibility regarding her attack in Oakland was "never seriously questioned." Vivano concedes that he did not challenge her credibility with regard to her being raped by four men, but he asserts that he did challenge her account of the events, her identification of him as an assailant (the "main focus" of his defense), and her contention that she did not get into the car voluntarily. Pet. 17–18. But challenges on these topics do not make the court's conclusion unreasonable because they are peripheral to the victim's credibility regarding the fact of the attack itself. Moreover, testimony from other witnesses, such as Paul Principe, Officer Frugoli, and the SART nurse, corroborated the victim's testimony that she was attacked in Oakland. *See* 1RT 54–55, 182–184; Ans. Ex. B Reporter's Transcript Vol. 2 ("2RT") at 360–362. On this record, the court of appeal did not unreasonably conclude that there was little or no serious questioning of the victim's credibility regarding the Oakland attack.

Neither did the court unreasonably conclude that cross-examining the victim regarding the Las Vegas incident "would have added little, if anything, to the jury's evaluation of her truthfulness." Vivano was permitted broad cross-examination on issues including the victim's failure to identify him from the photo lineup, the possibility that she had engaged in consensual sex in the days prior to the sexual assault with a man she could not remember, and her memory of details from the night of her attack. *See* 1RT at 119–124, 139–144, 164–66. Given that (during his appeal) Vivano offered only speculation about the falsity of the Las Vegas report, the court did not unreasonably conclude that the cross-examination on that attack would not likely have added anything to the assessment of the victim's credibility. *See* Ans. Ex. D. at 13–14.

Finally, it is not likely that cross-examining the victim regarding the Las Vegas incident would have supported Vivano's defense theories, either based on misidentification or consensual sexual intercourse. As noted above, he cross-examined the victim on her credibility extensively. *See* 1RT 119–124, 139–144, 164–66. Still, the victim twice identified him in court as the driver by his physical characters, and DNA corroborated evidence her testimony. *Id.* at 45–46, 48–49, 165–66; Ans. Ex. B Reporter's Transcript Vol. 3 ("3RT") at 485; 2RT 312–14. In addition, he

14

was able to—and did—assert that the physical evidence resulted from consensual sexual intercourse through the victim's alleged work as a prostitute. The victim admitted during cross-examination that she had "probably" had consensual sex with someone she could not remember days prior to her attack, and trial counsel questioned during closing argument whether the victim had worked a prostitute. *See* 1RT 164–66; 3RT 511–12. Therefore, Vivano received "a full and fair opportunity to probe and expose these infirmities through cross-examination." *Fensterer*, 474 U.S. at 22. Even if he had been able to cross-examine the victim about the Las Vegas incident, the court of appeal was not unreasonable to conclude that it would have "added little, in anything, to the jury's evaluation of her truthfulness." Accordingly, it was not unreasonable for the court to conclude that there was no Confrontation Clause violation.

### 2. Trial Counsel's Failure to Object on Confrontation Grounds

Vivano asserts that his trial counsel provided ineffective assistance by failing to object on Confrontation Clause grounds to trial court's limitation on cross-examination of the victim about the Las Vegas sexual assault. Pet. 24. As the court of appeal concluded, the trial court's limitation on cross-examination of the victim about the Las Vegas incident did not violate the Confrontation Clause. Accordingly, a specific objection on that ground would have been meritless. Because failure to raise a meritless objection does not constitute IAC, Vivano has not met his burden to show that "there was no reasonable basis for the state court to deny relief" when the California Supreme Court summarily rejected this claim. *See Harrington*, 562 U.S. at 98. Finally, the court could have reasonably concluded that trial counsel's performance did not prejudice him.

Vivano's IAC claim based on his trial counsel's failure to object on confrontation ground is denied.

### B. Failure to Accurately and Completely Relay Facts of the Las Vegas Incident

Vivano asserts that his trial counsel provided ineffective assistance by failing to accurately and completely relay the facts of the Las Vegas incident to the trial court. Pet. 26–27. He raised this claim in direct appeal to the California Court of Appeal and in a petition for review to the California Supreme Court, which summarily denied the petition. Ans. Ex. E at 27-29, Ex. H at

15–16, Ex. I. Vivano contends that court of appeal unreasonably applied the *Strickland* standard. *Id.* at 27–29.

Before trial, the prosecutor moved to bar admission of evidence of the victim's 2001 sexual assault in Las Vegas. Ans. Ex. B Reporter's Transcript ("RT") at 59. During motion *in limine* hearing, the trial court expressed an understanding of the incident as follows:

> [I]n the year 2001 the complainant made an allegation, a report to the police that she had apparently been drugged and I guess kidnapped and sexually assaulted while she was unconscious and left at the side of a road or something. And she reported that to the police not immediately but at a later time.

*Id.* When asked whether he had more information about the report, Vivano's trial counsel responded as follows:

> No. I just have the report. And actually, unfortunately, I don't have it with me, but I will say my memory of the report is that it was a late reporting. Interestingly, in that same report they also claim that they took pictures of her injuries, which seems odd to me. If my memory serves, she claims the incident happened in August and she reports it some time in October. So just seeing that line in the report, taking pictures of her injuries, so is it relating to the August incident, it really puts doubts in my mind of the veracity of the report and, you know, just what's going on with the report. It truly was a late reporting I wouldn't expect injuries from two months ago to necessarily be photographed.

*Id.* at 60–61. Vivano's trial counsel then stated that he wanted the option to cross-examine the victim about whether the 2001 event was a "false reporting." *Id.* at 61. When asked whether he had "any evidence whatsoever that it was a false report," Vivano's trial counsel indicated that he had only suspicions based on "some incongruence" in the report. *Id.* at 61–62.

The court of appeal rejected Vivano's ineffective assistance of counsel claim and reasoned as follows:

> [W]e disagree with Vivano that he received ineffective assistance of counsel because his trial attorney supposedly misunderstood the Las Vegas incident report and thus did not draw the court's attention to the fact that there apparently was no police report filed in connection with the incident and the victim was not actually drugged as the trial court mistakenly believed. Again, the circumstances contained in the 2001 incident report are unclear even with a careful review of the report, and evidence surrounding the events it described were properly excluded in any event. Vivano suffered no prejudice.

16

Ans. Ex. D at 15.

Vivano now urges that the court of appeal unreasonably applied the *Strickland* prejudice standard to the facts of this case.[5] Pet. 28. He argues that counsel should have shared with the court that the victim might have been untruthful when she told police that she reported the assault on the night it happened, the police wrote a report, an ambulance took her to the hospital, and her injuries were photographed. *Id.* at 26, 28–29. If trial counsel had made the court aware of these inconsistencies, Vivano argues, the court would have decided the issue differently, allowed cross-examination on this incident, and "at least one of the jurors would have reached a different conclusion regarding guilt." *Id.* at 29.

I cannot agree that the court's ruling was an unreasonable application of *Strickland*. After concluding that "the circumstances contained in the 2001 incident report [were] unclear even with a careful review of the report," it found no prejudice because the report was "properly excluded." Ans. Ex. D at 15. The court of appeal thus concluded that even if the trial counsel had provided the information that Vivano now argues was necessary, that information would not likely have affected the trial court's finding that evidence of the Las Vegas incident was inadmissible. I cannot say its conclusion was objectively unreasonable.

### C. Cumulative Prejudice

Vivano argues that his trial counsel provided ineffective assistance of counsel in two instances, both related to the Las Vegas incident, and together these failures create cumulative prejudice that entitles him to relief. Pet. 29. He did not raise this claim in state court; accordingly, it is not exhausted. He attempts to show that by bringing the IAC claims individually, he "fairly presented" a cumulative prejudice claim. Traverse 14–15. But it is not sufficient to raise only the facts supporting the claim; rather, the legal basis for the claim must be brought to the attention of the state court. *See Picard v. Connor*, 404 U.S. 270, 277 (1971). Furthermore, "a petitioner does

---

[5] The court of appeal declined to address the first prong of *Strickland* because the second prong was not met. *See Strickland*, 466 U.S. at 697; *Williams v. Calderon*, 52 F.3d 1465, 1470, n.3 (9th Cir. 1995) (applauding the district court's refusal to consider whether allegations about prior counsel after determining that petitioner could not establish prejudice), *cert. denied*, 516 U.S. 1124 (1996).

17

1    not exhaust all possible claims stemming from a common set of facts merely by raising one
2    specific claim." *Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013) (internal citation
3    omitted). Accordingly, it was not sufficient to present the IAC claims individually. Vivano has
4    not exhausted the cumulative prejudice claim, and federal habeas review is barred.

### III.    INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Vivano argues that his appellate counsel provided ineffective assistance by failing to raise an IAC claim based on trial counsel's failure to object on confrontation ground to the trial court's limitation on cross-examination. Pet. 30. Vivano contends that his appellate counsel's decision to raise the confrontation claim directly rather than to argue IAC of trial counsel was objectively unreasonable and prejudicial. *Id.* at 30–31.

The *Strickland* standard governs IAC claims for appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Vivano raised this claim to the California Supreme Court in his habeas petition, which the court summarily denied. *See* Ans. Ex. J at 34–36, Ex. K. Accordingly, to succeed on this claim Vivano must show "there was no reasonable basis for the state court to deny relief." *See Harrington*, 562 U.S. at 98. He has not met this burden. First, as noted above, the court of appeal concluded that the limitation on cross examination did not violate Vivano's confrontation rights, which means that trial counsel was not objectively unreasonable for failing to raise a constitutional objection, which means that appellate counsel was not objectively unreasonable for failing to raise IAC of trial counsel on those facts. *See supra* Section II.A; Ans. Ex. D at 14–15; *see also Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) ("Appellate counsel will . . . frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) . . . because she declined to raise a weak issue."). Vivano's claim for IAC of appellate counsel claim is denied.

### CONCLUSION

The state court's adjudication of Vivano's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence present in the state court proceeding. Accordingly, the petition is DENIED.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: May 20, 2019



William H. Orrick
United States District Judge